Good morning, Your Honors. May it please the Court. My name is Vitaly Segal. I'm the attorney for the petitioner. In this case, in 2004, the petitioner went into the United States Embassy in Lithuania, presented his story to the United States State Department about abuse that he suffered in Azerbaijan, about abuse that he suffered in Lithuania itself. The State Department, having heard his story, having had the petitioner right there in front of him, having had any kind of supporting documentation that the petitioner had available to him in front of them, determined that not only did he fear persecution in Lithuania, not only did he fear persecution in Azerbaijan, but also determined the firm resettlement issue and determined that the petitioner met the requirements for a refugee, that he had a well-founded fear of persecution based on his religion and that he is entitled to enter the United States. Four years later, the petitioner stole a bottle of vodka from a liquor store. And because of that, he was arrested, he was convicted of commercial burglary. The court decided that he no longer had a fear of persecution. He no longer feared going back to Azerbaijan. Did you argue to the BIA that the prior grant of refugee status now precludes a decision that's contrary to that? Because if not, we don't have jurisdiction to take up that issue. Well, there was no argument made to the BIA. At the time of his appeal to the BIA, the respondent did not have an attorney, and he didn't file a brief. His attorney that represented him at the trial in immigration court filed a brief for what he described as just to preserve his right, and the matter was submitted without a brief. The fact that the Board of Immigration Appeals then didn't address the issue of past persecution based on the fact that he was granted refugee status are positions that he shouldn't be excluded from arguing that fact when he, in fact, made no argument. This appeal at the BIA level was decided without the petitioner having filed a brief, and the petitioner was in custody, so he wasn't able to access all of the things that one would need to know. That's a sympathetic position, an argument to make, but you have to exhaust these issues before the BIA, before you come to us. I understand that, and I appreciate that, but the petitioner made no argument. So what you're really stuck with here is what the record is before the BIA, before the IJ, and before the BIA. Well, is the court saying that we're stuck with the record that's before the BIA, that the BIA itself made, because the petitioner made no record? Essentially, yes. He wasn't represented by counsel. Well, the issues that were raised before the BIA, you can – the BIA addressed in their opinion. They're certainly ripe for us to look at. I understand, but we believe that despite the jurisdictional issues, there is an issue that the petitioner – So look, there really – I think there's some argument that he tried to make that he hadn't firmly resettled in Lithuania. That's correct, Your Honor. But it sure looks like he's resettled. He had citizenship, he was married, the whole thing. Well, despite all – It looks like he's firmly resettled, so that means you're not – he's not entitled to asylum from Azerbaijan, correct? If, in fact, he is truly – Let's assume that he's firmly resettled in Lithuania. If he's firmly resettled – Then he's not eligible for asylum from Azerbaijan, right? Could he get – would he be entitled to claim withholding from Azerbaijan even though he's firmly resettled in Lithuania? No, Your Honor. He would be entitled to claim – he wouldn't be entitled to claim anything if he's firmly resettled in another country. The only thing he could claim is that he has – he suffered past persecution in Lithuania and that – or he has a fear of returning to Lithuania. Is that what your position is then? He's arguing both. He did suffer past persecution. Well, I mean, that's what I meant, both, one or the other. Yes, Your Honor. That is our position. So what is the past persecution in Lithuania then? Well, there was the general context of anti-Semitism that he faced and he was also attacked physically when he was leaving a synagogue by anti-Semitic youths that attacked him because he's a Jew, so – Was he injured during the attack? Was that the only attack and was he injured? To the extent of his injuries, he wasn't injured permanently, and yes, that was the only attack, but – Do you have any case that would support your position on that, that – where there was only a single attack and no injuries? The cases that you've cited were repeated attacks, were injuries, and none of those factors are here. Well, there was more than one incident. There was more – physically, there was one attack, but there was more than one incident. He described a general context of anti-Semitism, general context – Well, anti-Semitism, as awful as it is, is it sufficient? If it rises to the level of persecution, yes. If it rises to physical abuse, if it rises to – There was no physical abuse here. I'm asking what are the things that make the anti-Semitism rise to the level of persecution as opposed to discrimination? Well, not being able to get employment, being told by an officer in immigration that he wished Jews were not allowed into this country. I mean, these are all things that the petitioner saw on a daily basis, and our position is that it does rise to the level of persecution, and it does rise to the level where he would be eligible for asylum. So let's assume that he's unable to show past persecution from Lithuania – in Lithuania. So does he have a reasonably objective fear of returning to Lithuania? Without past persecution? Yes. Without the presumption. What would you point to? Or was there air by the board? I mean, what's the argument for fear of future persecution? Well, we believe the board erred because there was past persecution. Without past persecution, you're correct. We don't have an argument for future persecution, but that's the basis of the claim for future persecution. But with past persecution, there's also a presumption of future persecution. But as Judge Nelson was trying to point out, I think, you know, it's a hard argument here to make that there was past persecution in Lithuania. But nonetheless, and I appreciate that argument. You can't – I think, I'm not mistaken, but I think our case law does allow you to look at what happened in the past. Even if it doesn't rise to the level of persecution in the past, the harm that somebody may have suffered, the discrimination, the inability to work and the treatment, and you can add that, you can look at that, and then look at the country condition reports and the treatment of Jews in Lithuania, and then make an argument that there's a reasonable fear of returning to Lithuania. Right, Your Honor. And that kind of goes back to our initial argument, and I understand that there's a jurisdictional issue. But nonetheless, as far as proving factually past persecution, obviously there was some level of past persecution because it was determined by the State Department that there was. So even if the court says, well, no, we can't – you can't argue that there's a presumption of past persecution because he met the definition of refugee four years ago, nonetheless, the fact that the State Department made the decision to grant him refugee status, knowing the law, knowing that there's a firm resettlement bar, there's a certain level of persecution that needs to be met, that possibly what Judge Nelson stated, that maybe this doesn't rise to the level of persecution, they evaluated all that and determined that there was. So if the fact that he was given refugee status and the State Department determined that, yes, in fact, he is a refugee, if that can't be used as a presumption, at the very least, it could be used as a fact to consider when determining whether or not the petitioner meets the definition of refugee and whether or not the petitioner is entitled to asylum. Now, is there cases of massive amounts of persecution that went on in Lithuania to the petitioner? Absolutely not. There are instances, but the reason for that is because he didn't live very long in Lithuania. Well, he was there for a number of years. What is – bottom line, what are you asking for? We're asking that the court reverse the ruling of the BIA and more so the immigration court that he didn't meet the definition of refugee and he didn't prove past persecution. And if he proved past persecution, then the court needs to make a determination as to whether or not that presumption that arises when somebody proves past persecution has been overcome. Our position is that it has not. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. Thank you. May it please the Court, Elizabeth Kurland on behalf of the United States Attorney General. Would you please speak up? May it please the Court, Elizabeth Kurland on behalf of the United States Attorney General. Substantial evidence supports the Board's determination that the firm resettlement bar applied to petitioner's asylum claim from Azerbaijan and that he had not established past persecution or a well-founded fear of future persecution. Can I just stop you for one second? There's something I need to understand. I've never really understood this. When there's a firm resettlement bar – there's strong evidence here that Mr. Sadichov was firmly resettled in Lithuania. He was a citizen of Lithuania and whatnot. Does that mean that he's precluded from getting any relief regarding Azerbaijan? My research has indicated that the possibility – deferral of removal under CAT may still be a possibility. However – Well, I don't understand why the IJ, once she determined that he had firmly resettled in Lithuania, went on to work into her analysis the whole business about Azerbaijan. I'm sorry, Your Honor. Well, so the IJ does both. She looks at both Azerbaijan, what happened to him in Azerbaijan and what happened to him in Lithuania, according to his story. But if he's firmly resettled in Lithuania, why did she do that? Is there a possibility he could be sent back to Azerbaijan if Lithuania didn't take him? No, Your Honor. What happens under those circumstances – from my reading of the immigration judge's decision, she was analyzing his claim because he had claimed both. But in the alternative, she also found in conclusion after looking at the circumstances of Lithuania that he had not established, that the firm resettlement bar applied based on the circumstances of when he was in Lithuania. He traveled back to Azerbaijan several times. So if the firm resettlement bar applies, then do we only look at what's happened in Lithuania? Yes, Your Honor. That's it? We don't think about Azerbaijan? Yes, Your Honor. And that is what goes back to what I previously mentioned, that because the firm resettlement bar applies, petitioner has not – he never raised the argument that he could have possibly qualified under one of the exceptions before the agency, so he hasn't exhausted that claim. We don't look at what happened in Azerbaijan for purposes of assessing his withholding of removal claim? Is that your answer to Judge Pius' question? I just want to clarify that. With – Because he can't argue past persecution in Azerbaijan anymore, but does the acts of persecution that may rise to the level of past persecution still need to be assessed as it pertains to his withholding of removal claim? It's relevant to his withholding of removal claim under CAT. Under CAT, but not under the regular statute? No, that is my understanding. Do you have authority for that? I think that would be under 243 – under the withholding of removal statute. Okay, I'll take a look at that. All right, so what – let's focus on Lithuania then. Yes, Your Honor. And with regards to that claim, as the Board recognized, his – the only incident that – the main incident that he relies on is the attack that – by a group of radical individuals, a group of young men, he stated, that attacked him outside of the synagogue. But he claimed he was attacked by a group of skinheads after executing – exiting a synagogue. Yes, Your Honor. And you're saying that's insufficient? It is, Your Honor. As the agency – based on – the immigration looked at the record – the immigration judge looked at the record and saw that he had had this – it seemed to be an attack by these group of individual – radical individuals, but he didn't sustain any harm. He was able to walk away. It appeared that he was able to kind of – he fought back. And then he lost – and then he stated that he briefly lost consciousness, but then he was able to walk away from the scene and leave. And that is the only other incident. And so – What about sustained economic pressure? In Kristova, we indicated that the BIA has to look at sustained economic pressure in conjunction with the other incidents of physical attacks that may not in and of themselves rise to the level of persecution. Did the BIA give that any consideration in this case? Yes, Your Honor. The board did analyze that claim. It – and as well the immigration judge. That is not – that – his – that claim is not supported by the record. He held many different types of jobs. He was married to a Lithuanian citizen. His wife held a bank managerial position for 10 years – the 10 years that they were there. He was able to hold these jobs, but there's no indication that he wasn't able to get any job because of his – He had to look for temporary jobs. Basically, he was relegated to temporary jobs as a handyman, a driver, et cetera, even though he was qualified for other jobs. As a Jew and an outsider, I could never find a job in Lithuania. That's in his declaration. I don't see an analysis of that in the BIA decision. Well, actually, the immigration judge addressed that by looking at the fact that there was no evidence that he was – he never alleged that he was qualified or that he tried for any jobs and was refused those jobs. It just was simply that he did not appear to have been able to, for entirely any reason outside of his religion, that he wasn't able to – that he didn't find a job that he was satisfied with. And in the – the immigration judge addressed that, and then the Board, in its decision, affirmed that finding when it – excuse me for one second, Your Honor. And by the IJ addressing that, you're referring to excerpts of record, page 30, where the IJ said that the fact that respondent found it difficult to find employment, he was not so severely deprived of employment as to not be able to have a livelihood. You're saying that's sufficient under Kristofa, that so long as he's not deprived of a livelihood and he can find any job, despite the fact that he qualifies for additional opportunities but weren't given those opportunities, that that's still sufficient under a case law? It is sufficient, Your Honor, because it is his burden, and in his testimony, even before the immigration judge, he was not able to identify any particular reason. He just made the general claim, I couldn't hold down a job. But there's no indication that he was – he tried for any jobs and was disqualified based upon his religion, or that he suffered economically, for that matter, because he and his wife were able to support themselves without any problems. There wasn't any – he didn't assert any economic problems or lack of income that was coming into the family. They lived fine for 11 years in Lithuania. His wife held down the same job. His son was born there. They went to school there. He was never – in fact, he testified to having business concerns, and that was the reason why he would travel back and forth from Lithuania to Azerbaijan during that time period as well. So he may have been involved in some business concerns, but there's no indication he was ever refused employment or that the Lithuanian government was ever involved in any incidences that prevented him from earning a livelihood. Was he able to continue to practice his religion? Yes, Your Honor. In fact, that was – unfortunately, that unfortunate incident outside the synagogue was an event that occurred while he was practicing his religion. And based on the record before the immigration judge, at the – based on his well-founded fear, he also did not have a well-founded fear. He couldn't – there – the incidents that have happened – that one incident in the past didn't indicate that there was – that it would be likely to happen to him in the future. Well, the country conditions report seemed to suggest that Jews in Lithuania have issues. No, Your Honor. Actually, the country – what the country conditions report do indicate is that the government is actively – was actively trying to prevent acts of vandalism. There were indications that there were acts of vandalism that had committed against Jewish graves. And so they were actively trying to prevent that and promote religious tolerance. And there were no reports of religious violence that had been directed against any religious group. So combined with all of that information, the immigration judge concluded that he did not meet his burden of proof and that he had not established a well-founded fear. Except the immigration judge didn't take – doesn't seem to have taken into account the incident outside the temple when he was – The immigration judge did consider that incident, Your Honor. In her evaluation of future – her fear of future persecution. Well, she discussed the event as part of what his claim was. And then – but because that incident, not only did it not rise to the level – an act committed by a radical element of society, a sole incident, that – not only did that not rise to the level of past persecution, but that one incident does not indicate or does not combine with any other objective evidence to indicate that there is a well-founded fear of persecution. And I'd like to also just say – So it's your position that there's no evidence that Jews and Lithuanian don't suffer discrimination and harassment and – No, Your Honor, that's not – what we're saying is – I mean, there must – the State Department obviously felt something was in play when they granted him refugee status years ago. And I would like to address that particular aspect of Petitioner's argument. Aside from the fact that he failed to exhaust that claim, which is very important, because by not – by doing that, he effectively removed that consideration. The agency did not consider – considered the fact that he was a prior refugee, but did not analyze that claim and was not given that opportunity to address that. I'd like to state that he was represented by counsel, Your Honor, during – before the board. He chose not to submit an administrative appellate brief, and there is no indication that he did not receive the board's decision or did not receive any board orders during that time. Also, in looking at the record, because of the fact that he didn't assert that claim, the only indication that he was – he entered in refugee status is a USCIS printout, which the government submitted. And in that printout, it indicates he entered as an RE6 refugee. I'd like to address the Court's concern if there's – there appears to be any discrepancy. Well, it's not in the record. He didn't exhaust it, so I mean, we're not going to – I'm just making an observation. So let me ask you. I still don't – I'm still – I've always been confused in these cases, you know, when there's two countries involved where there's a claim of firm resettlement. Could the – suppose Lithuania didn't want to take him back because he's Jew – Jewish. Yes, Your Honor. Could our government send him to Azerbaijan if they would take him? If they indicated – yeah, it depends. If they indicated that they would take him, there is that possibility. He was – the country that was designated for removal was – I believe it was Lithuania. Was it both? I think it was Lithuania, and I would have to look back in the record just to make sure, Your Honor. But I do believe it was Lithuania, and there is a possibility that Azerbaijan was listed in the alternative. I'm not – I can't, with specificity – So if Azerbaijan is listed as a possible alternative – Yes. Don't we have to make certain that we are relieved from considering his claim for withholding of removal? I'm still not clear about that. And if that is the consideration, he hasn't – that goes towards what the immigration judge in the general decision found, that he had not established a claim for relief. Well, I mean, his claim – past persecution in Azerbaijan is much stronger than his claim in past persecution in Lithuania. Well, I would disagree based on the record, and I think that's what the agency determined, and that's why the immigration judge addressed that in the alternative, because the incidents that he experienced in Azerbaijan did not, actually. If we were to look at it, aside from the firm resettlement, we would say that his one claim was the medical schooling, that he was denied the ability to finish, which, based on his father's testimony, wasn't the case. He failed a required course, and the dean, which – his education, by the way, was favored by the government. It wasn't scientific communism? Yeah, and the dean had just said, you can go back to school. If you retake the course, then go back, but you have to start at the beginning. And he didn't – he refused to do that. He went away and enlisted in the army, and he served in the army for two years. So there doesn't – there does not appear to be a sufficient history. I see that I'm – my time is out, and so I'd just like to conclude that the court would not be compelled to find that he established persecution. Thank you. There's a poignant moment in the respondent's presentation when Judge Nelson asked, well, was he allowed to practice his religion, and the response was, yes, that's – in Lithuania, I apologize. Yes, that's when he was subject to the attack coming out of the synagogue. So is that being able to practice your religion be – not knowing whether or not you're going to be attacked for coming out of a synagogue after having done so? Wasn't there evidence that he did continue to practice his religion, in the record, after that attack? Yes, Your Honor, there was. But the fact that he doesn't give up his religious beliefs because he was attacked once is further proof of future persecution, rather than saying, well, it must not have been that bad because you went back to the synagogue a week later or a month later or however much later. He was in fear for his safety when he walked out of the synagogue. He was in fear for his safety when he practiced his religion. And the fact that there was one attack establishes the fact that there could be more attacks, establishes the fact that he, in fact, is not free to practice his religion. If you fear that you're going to be attacked coming out of a synagogue, you're not free to practice your religion. You're practicing your religion despite the fact that your life could be put in danger for doing so. But that doesn't mean you're free to practice your religion. The fact that he is deprived of his livelihood, the fact that he's stating that he has to take odd jobs and find some sort of work because, for the most part, he can't find employment as a result of being Jewish, the totality of the circumstances, everything put together, whether you want to look at Azerbaijan, whether you want to look at Lithuania, establishes the fact that he fears persecution because of religion. If the court has no more questions, I will submit. Thank you very much. The matter will be submitted at this time. Thank you, counsel. We appreciate your arguments.
judges: Nelson, Paez, Nguyen